## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RONNIE CAMESE**                                    **CIVIL ACTION**

**VERSUS**                                           **NO. 14-202**

**CASEY MCVEA, et al.**                              **SECTION: "G"(3)**

### ORDER

Plaintiff Ronnie Camese ("Plaintiff") is an offender incarcerated in the Rayburn Correctional Center ("RCC") in Angie, Louisiana.[1] On January 24, 2014, Plaintiff filed the complaint in this matter, asserting claims pursuant to 42 U.S.C. § 1983 against several prison officials and officers.[2] Plaintiff alleges that several prison officers and officials violated his Eighth Amendment rights by using excessive force or by failing to intervene in the use of excessive force.  Plaintiff also alleges that Defendants Dr. Casey McVea ("Dr. McVea"), Warden Robert Tanner ("Warden Tanner"), Deputy Warden Keith Bickham ("Deputy Warden Bickham"), and Assistant Warden Johnny Gerald ("Assistant Warden Gerald") (collectively, "Moving Defendants") violated his Eighth Amendment rights by acting with deliberate indifference to his serious mental health needs.

Before the Court is Moving Defendants' "Motion for Partial Judgment on the Pleadings Based on Qualified Immunity,"[3] which pertains only to Plaintiff's claims that Moving Defendants acted with deliberate indifference to his serious mental health needs. The pending motion does not seek judgment on the pleadings with respect to Plaintiff's excessive force or failure to intervene in

---

[1] Rec. Doc. 1 at p. 9.

[2] *Id.* at pp. 9–11.

[3] Rec. Doc. 28.

1

the use of excessive force claims against Defendants Capt. Kevin Luper, Sgt. Master Nathaniel Graham, Sgt. Master Darryl Grant, Sgt. Master Terry Kennedy,  Sgt. Gary Crain, and Assistant Warden Gerald. Of these Defendants, only Assistant Warden Gerald is a party to the pending motion. According to Moving Defendants, the other Defendants in this lawsuit did not join in the instant motion because no claims of deliberate indifference were brought against them.

Having considered the  Moving Defendants' "Motion for Partial Judgment on the Pleadings Based on Qualified Immunity," the memoranda in support and in opposition, the complaint, the record, and the applicable law, the Court will grant the motion.

## I. Background

Plaintiff, proceeding *pro se*, alleges  that he attempted suicide in his cell at RCC on April 8, 2013 and was treated in the prison infirmary by Dr. McVea.[4] According to the complaint, Dr. McVea initially recommended that Plaintiff be transported to an outside medical facility but, after speaking with Deputy Warden  Bickham,  decided to keep Plaintiff in the prison infirmary on "extreme suicide watch."[5] Plaintiff alleges that a prisoner on "extreme suicide watch" is placed in four-point restraints in an isolation cell.[6]  Plaintiff also alleges that Dr. McVea made him an appointment with a mental health social worker, but that the appointment never took place.[7]

According to the complaint, on April 9, 2013, Dr. McVea conducted a physical examination of Plaintiff, at which point Plaintiff stated that "I feel suicidal."[8] Following this examination,

---

[4] Rec. Doc. 1 at p. 11.

[5] *Id.*

[6] *Id.* at ¶ 20.

[7] *Id.* at p. 12.

[8] *Id*. at ¶ 22.

according to the complaint, Dr. McVea found Plaintiff to be "medically _and_ mentally stable enough" to attend a court appearance that day at the 22nd Judicial District Court.[9]

Plaintiff alleges that he was then taken out of the four-point restraints, ordered to put on an orange jumpsuit, placed in wrist and ankle restraints, and escorted to court by two prison officers, Sgt. Master Terry Kennedy and Sgt. Master Nathaniel Graham.[10] During the course of this trip, according to the complaint, Plaintiff again attempted suicide, this time by running in front of an oncoming truck which stopped without injuring him.[11]

Plaintiff alleges that Kennedy and Graham threw him to the ground, dragged him back to the RCC transport vehicle, and, once inside, "one of the officers got inside of the vehicle with him and delivered several unprovoked, close-fisted punches to Plaintiff's head and body." Plaintiff alleges that he was restrained at his wrists and ankles so, "to discourage the officer's battery, Plaintiff began to bite at the officer's hands."[12] According to the complaint, the officers "literally carried" Plaintiff into the courtroom.[13] On the way out, Plaintiff alleges that the officers attempted to throw him down a staircase, which he resisted by grabbing the railing of the stairwell and Graham's body and clothing.[14] Plaintiff alleges that several of the prison officers began to punch and kick him, and that Assistant Warden Gerald and another prison official were present but failed to intervene.[15] Plaintiff

---

[9] _Id._ at ¶ 47 (emphasis in original).

[10] _Id._ at p. 13. Both Kennedy and Graham are defendants in this litigation, but neither joins in the pending motion.

[11] _Id._

[12] _Id._ at p. 14.

[13] _Id._ at p. 15.

[14] _Id._ at p. 16.

[15] _Id._

alleges that he suffered "a busted lip and pain in his face, torso, arms, and back."[16]

Plaintiff filed the complaint in this matter on January 24, 2014.[17] Moving Defendants filed the pending motion on December 10, 2014,[18] and Plaintiff filed a memorandum in opposition on December 29, 2014.[19]

## II. Parties' Arguments

### A.    *Moving Defendants' Arguments in Support*

Moving Defendants contend that they are entitled to qualified immunity with respect to Plaintiff's claim that they violated his Eighth Amendment rights due to their deliberate indifference to his medical needs.[20] According to Moving Defendants, the qualified immunity analysis is a two-pronged inquiry: first, the Court must decide whether the plaintiff has alleged a violation of a constitutional right; second, if the plaintiff has satisfied the first step, the Court must determine whether the right at issue was "clearly established" at the time of the defendants' alleged misconduct.[21]

With respect to the first prong of the qualified immunity test, Moving Defendants contend that the inquiry in a § 1983 suit is whether the plaintiff has been deprived of a right secured by the

---

[16] *Id.*

[17] Rec. Doc. 1. Plaintiff also alleges that he filed an Administrative Remedy Procedure grievance ("ARP") with RCC on May 13, 2013, wherein he alleges that Dr. McVea and Deputy Warden Bickham allowed him to be transported to the court appearance on April 9, 2013, even though he was on suicide watch. *See* Rec. Doc. 1 at p. 9.

[18] Rec. Doc. 28.

[19] Rec. Doc. 30.

[20] Rec. Doc. 28.

[21] *Id.* at p. 3 (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

Constitution and laws.[22] According to Moving Defendants, Plaintiff alleges that Dr. McVea, Warden Tanner, and Deputy Warden Bickham violated Plaintiff's Eighth Amendment rights via their deliberate indifference to his serious mental health needs.[23] Moving Defendants aver that the "deliberate indifference" test is bifurcated into objective and subjective prongs, and that the objective severity of Plaintiff's mental health condition—suicidal ideation—is undisputed.[24] They do, however, dispute that the subjective element of deliberate indifference is present here, arguing that "[n]either prison officials nor medical providers define the applicable standard by which we assess [their] conduct; deliberate indifference exists wholly independent of an optimal standard of care."[25]

Moving Defendants additionally argue that "a prisoner's conclusory allegations, speculation, and unsubstantiated opinions about what treatment he wants and how quickly he wants it" are also immaterial to the deliberate indifference analysis.[26]

Moving Defendants argue that they did not act with deliberate indifference and thus did not violate a clearly established constitutional right.[27] First, they contend that Plaintiff fails to allege that they acted with deliberate indifference in the treatment of his injuries from the April 8, 2013 suicide attempt, or in their initial response to that incident.[28] They appear to agree with Plaintiff's account

---

[22] *Id.* at p. 5 (citing *Baker v. McCollan*, 443 U.S. 137 (1979)).

[23] *Id.* (citing Rec. Doc. 1 at p. 6).

[24] *Id.* at p. 6.

[25] *Id.* at p. 7 (citing *Gobert*, 463 F.3d at 349).

[26] *Id.* (citing *Gobert,* 463 F.3d at 347).

[27] *Id.* at p. 8.

[28] *Id.*

that Dr. McVea initially recommended that Plaintiff be transported to an outside medical facility, but then ordered that he be placed on "extreme suicide watch" at RCC instead.[29] However, Moving Defendants contend that Plaintiff's disagreement with Dr. McVea's "change of course" was within the exercise of his professional medical judgment, and does not violate Plaintiff's constitutional rights.[30] Moving Defendants also argue that Dr. McVea authorized Plaintiff to attend the April 9, 2013 scheduled court trip after determining that Plaintiff was "medically and mentally stable enough to go to court."[31] According to Moving Defendants, "Dr. McVea's determination that plaintiff was stable enough to go to court was clearly a medical judgment (made during an examination) and is not indicative of deliberate indifference even if the diagnosis turned out to be wrong."[32]

Next, Moving Defendants argue that Plaintiff "does not allege Deputy Warden Bickham (or any other defendant) intentionally interfered with 'a prescribed course of treatment.'"[33] They contend that Plaintiff fails to allege that he was denied treatment following his suicide attempt, and, to the contrary, that he received treatment as described in his complaint.[34] Further, they contend that Plaintiff fails to adduce facts supporting the contention that Deputy Warden Bickham was involved at all in the decision to send Plaintiff to court, or in any of the events that occurred on the court trip.[35]

---

[29] *Id.*

[30] *Id.* at p. 11 (citing *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982)).

[31] *Id.* (citing Rec. Doc. 1 at ¶ 22).

[32] *Id.* at pp. 11-12.

[33] *Id.* at p. 10 (citing *Criollo v. Milton*, 414 F. App'x 719, 720-21 (5th Cir. 2011)).

[34] *Id.*

[35] *Id.* at p. 12.

6

Moving Defendants submit that Plaintiff fails to allege that Warden Tanner or Assistant Warden Gerald were present or involved in any way in the April 8, 2013 events, or in the decision to authorize the April 9, 2013 court trip.[36] Moving Defendants contend that Plaintiff fails to make any allegations at all against Warden Tanner, let alone plead that Warden Tanner knew of Plaintiff's condition and responded with deliberate indifference.[37] Finally, they argue that neither Warden Tanner nor any other defendant can be held liable under any theory of vicarious liability.[38]

**B.      *Plaintiff's Arguments in Opposition***

In response, Plaintiff contends that the Moving Defendants do not fall within the protections of the qualified immunity defense.[39] First, Plaintiff avers that Moving Defendants do not deny that Dr. McVea initially recommended that Plaintiff be sent to an outside medical facility, but then placed him on "extreme suicide watch."[40] Plaintiff repeats the allegations made in his complaint, namely that Dr. McVea spoke with Deputy Warden Bickham, and then "notwithstanding Plaintiff's expressed suicidal ideation to the doctor, Dr. McVea still cleared Plaintiff to go on the court trip."[41] According to Plaintiff, the Moving Defendants concede that he was suicidal, and "[b]y the defendants admitting Plaintiff's suicidal ideation, it follows that Dr. McVea was deliberately indifferent to Plaintiff's mental health needs when he rescinded his previous order to transfer Plaintiff to an outside-facility [sic] for mental evaluation, and when he approved Plaintiff to go on

---

[36] *Id.* at p. 11.

[37] *Id.* at p. 14.

[38] *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

[39] Rec. Doc. 30 at p. 2.

[40] *Id.*

[41] *Id*

7

the Franklinton Louisiana court trip."[42] Plaintiff argues that "the defendants admitting that he was

suicidal on the one hand, but claiming that they were not aware of the potential for serious harm to

Plaintiff does not make sense. A suicidal person is extremely unpredictable."[43] Plaintiff

acknowledges that the Eighth Amendment does not mandate a certain level of medical care for

prisoners, but contends that prison officials nonetheless have a duty to ensure that inmates receive

adequate medical care.[44]

With respect to his allegations against each individual Moving Defendant, Plaintiff states:

. . . Dr. McVea was deliberately indifferent to Plaintiff's mental health needs when
he rescinded his previous order to transfer Plaintiff to an outside-facility for mental
evaluation, and when he approved Plaintiff to go on the Franklinton Louisiana court
trip. These actions by Dr. McVea resulted in Plaintiff's April 9, 2013 suicide
attempt. The persuasion by Warden Bickham to get Dr. McVea to change the initial
plan of medical care renders Warden Bickham liable under the deliberate
indifference analysis. Warden Gerald was aware of Plaintiff's suicidal ideations, and
he did not terminate the Franklinton court trip, which makes him liable under
deliberate indifference analysis. And Warden Tanner failed to ensure the other
defendants were operating within the bonds of the federal constitution, which makes
him liable under the deliberate indifference analysis.[45]

Plaintiff also avers that Deputy Warden Bickham admitted in a letter to Warden Tanner that "he did

influence Dr. McVea to not send Plaintiff to an outside facility for evaluation."[46]

### III.  Applicable Law

#### A.   *Legal Standard Applicable to a Rule 12(c) Motion to Dismiss*

Moving Defendants have filed the pending motion pursuant to Federal Rule of Civil

---

[42] *Id.* at p. 5.

[43] *Id.* at p. 10.

[44] *Id.* (citing *Easter v. Powell*, 467 F.3d 459 (5th Cir. 2009)).

[45] *Id.* at pp. 5-6.

[46] *Id.* at p. 3.

Procedure 12(c).[47] "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[48] "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[49]

"A motion under Rule 12(c) for failure to state a claim is subject to the same standards as a motion to dismiss under Rule 12(b)(6)."[50] The United States Fifth Circuit Court of Appeals has explained:

> To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level. In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.[51]

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[52] A court must

---

[47] The Court notes that the Moving Defendants state in the pending motion that they "respectfully move this Honorable Court for judgment in their favor as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure because the plaintiff failed to exhaust administrative remedies prior to filing the instant suit as to the claims against them." *See* Rec. Doc. 28 at p. 1. However, the remainder of the motion, as well as the entirety of Moving Defendants' 16-page memorandum in support, argues that Moving Defendants are entitled to qualified immunity to suit and to dismissal with prejudice of Plaintiff's Eighth Amendment claim of deliberate indifference to his serious mental health needs. *See* Rec. Doc. 28-1 at p. 1. Since Moving Defendants submit no additional argument, analysis, or even mention of either Rule 56 or the exhaustion of administrative remedies, the Court understands the opening paragraph in Moving Defendants' motion, which refers to Rule 56 and the exhaustion of administrative remedies, to be a typographical error.

[48] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citing *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)).

[49] *Id.* (citing *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).

[50] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209–10 (5th Cir. 2010).

[51] *Id.* at 210 (citations, quotation marks, and brackets omitted).

[52] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.[53]  A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[54] In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[55] If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed.[56]

Where, as here, defendants assert the defense of qualified immunity, the Fifth Circuit has instructed that  an eligible defendant's Rule 12(b)(6) motion must be granted unless the plaintiff's complaint states "with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity."[57] Stated differently, "a district court must first find that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[58] When a qualified immunity defense is involved, the pleading standard is heightened and requires that plaintiffs "plead their case with

---

[53] *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 239 (5th Cir. 2009).

[54] *Id.*

[55] *Id.* at 257.

[56] *Twombly,* 550 U.S. at 555.

[57] *Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986) (*citing Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985)).

[58] *Backe*, 691 F.3d at 648 (*citing Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995) (internal quotation marks omitted)).

precision and factual specificity."[59] "[B]ecause this case is at the Rule 12(b)(6) stage, the *allegations* are tested."[60] Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.

**B.**    ***Standard Applicable to* Pro Se *Litigants***

Finally, the Court is cognizant that Plaintiff is proceeding *pro se*, and is therefore entitled to certain limited considerations. *Pro se* plaintiffs often lack the legal training helpful in interpreting and applying the substantive and procedural requirements of the legal system. Therefore, the Fifth Circuit has held that "[w]e give *pro se* briefs a liberal construction."[61] This does not mean, however, that a court "will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing."[62] Moreover, even with liberal construction, "mere conclusory allegations on a critical issue are insufficient."[63] *Pro se* plaintiffs are otherwise required to know their legal rights and abide by all applicable procedural rules,[64] and a *pro se* plaintiff's ignorance of, or unfamiliarity with, court proceedings does not relieve him of this duty.[65]

---

[59] *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003).

[60] *Langford v. Union Cnty., Mississippi*, 51 F. App'x 930 (5th Cir. 2002) (unpublished) (*citing Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At that earlier stage, it is the defendant's conduct as alleged in the complaint that is scrutinized.")).

[61] *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012) (*citing Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604 (5th Cir. 2008)); *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002).

[62] *Jones v. Alfred*, 353 F. App'x 949 (5th Cir. 2009) (unpublished).

[63] *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).

[64] *Washington v. Jackson State Univ.*, 532 F. Supp. 2d 804, 809 (S.D. Miss. 2006) (citing *Boswell v. Gov. of Texas*, 138 F.Supp.2d 782, 785 (N.D. Tex. 2000)).

[65] *See Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991).

## IV. Analysis

In order to defeat the pending motion, Plaintiff must assert facts which, if true, would overcome the defense of qualified immunity.[66] Qualified immunity protects governmental officials from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The United States Fifth Circuit Court of Appeals has explained:

> The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent placed the statutory or constitutional question beyond debate. Therefore, a plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. A court has discretion to decide which prong to consider first.[67]

The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in light of that clearly established law.[68] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[69]

Beginning with the first prong of the qualified immunity analysis, the Court must determine whether Plaintiff has sufficiently alleged that the Moving Defendants' conduct violated a

---

[66] *Backe*, 691 F.3d at 648 (*quoting Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995) (internal quotation marks omitted)).

[67] *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S.Ct. 1935 (2014).

[68] *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998).

[69] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citation omitted).

constitutional right of the plaintiff.[70] The constitutional right at issue here is the Eighth Amendment's prohibition on cruel and unusual punishment. Finding a violation of this right requires a twofold analysis. First, the plaintiff must prove objective exposure to a substantial risk of serious harm.[71] Then, the plaintiff must demonstrate that prison officials acted or failed to act with deliberate indifference to that risk.[72] Here, there is no dispute regarding the first part of the Eighth Amendment analysis. Moving Defendants do not dispute the objective severity of Plaintiff's mental health condition and suicidal ideation.[73] Instead, at issue is whether Plaintiff has sufficiently alleged that prison officials acted or failed to act with deliberate indifference to that risk.[74]

"Deliberate indifference is an extremely high standard to meet," and requires a plaintiff to establish more than mere negligence, unreasonable response, or medical malpractice.[75] "Subjective recklessness as used in the criminal law is the test for deliberate indifference under the Eighth Amendment."[76] This test "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware."[77] Interpreting the principles articulated by the United States Supreme Court in *Farmer v. Brennan*, the Fifth Circuit has instructed that:

---

[70] *Rockwell*, 664 F.3d at 990.

[71] *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

[72] *Id.*

[73] *See* Rec. Doc. 28-1 at p. 6.

[74] *Rockwell*, 664 F.3d at 990.

[75] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *see also Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).

[76] *Williams v. Hampton*, 2015 WL 4546858, at *3 (5th Cir. July 28, 2015) (en banc) (*citing Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

[77] *Id.* at *2 (citing *Farmer*, 511 U.S. at 837).

> The Supreme Court has reasoned that this subjective test flows from the punishment aspect of the Eighth Amendment. [I]n the Eighth Amendment context . . . a subjective approach isolates those who inflict punishment. The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments. Accordingly, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.[78]

Accordingly, there are two necessary components to a claim of deliberate indifference under the Eighth Amendment: (1) "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) "he must also draw the inference."[79] With this background in mind, the Court will examine Plaintiff's allegations with respect to each Moving Defendant separately.[80]

### 1.   Dr. McVea

Plaintiff alleges that Dr. McVea acted with deliberate indifference when he recommended that Plaintiff receive treatment at RCC on April 8, 2013, and again when he authorized Plaintiff to attend a court proceeding on April 9, 2013.

With respect to the first allegation, Plaintiff avers that Dr. McVea acted with deliberate indifference when he recommended that Plaintiff be placed on "extreme suicide watch" at RCC, after initially recommending that Plaintiff be transported to an outside facility for treatment.[81] However, a prisoner's disagreement with his medical treatment, absent exceptional circumstances,

---

[78] *Id.* (internal quotation marks omitted).

[79] *Id.* (citing *Farmer*, 511 U.S. at 837).

[80] *See Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir. 1999) (instructing that in a section 1983 action, the conduct of each defendant who has been sued in his individual capacity should be examined separately).

[81] Rec. Doc. 30 at p. 2.

14

does not constitute deliberate indifference.[82]   Even if Dr. McVea's recommendation regarding

Plaintiff's treatment was inadequate, deliberate indifference cannot be inferred merely from a

negligent, or even a grossly negligent, response to a substantial risk of serious harm.[83] Plaintiff has

not alleged that Dr. McVea refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would clearly evince a "wanton disregard" for

his serious medical needs.[84] Plaintiff has not alleged facts which would overcome the defense of

qualified immunity with respect to Dr. McVea's recommendation that Plaintiff be treated at RCC,

rather than transported to an outside facility.[85]

Plaintiff additionally alleges that "Dr. McVea was subjectively and objectively

knowledgeable of the substantial risk that Plaintiff posed to his own safety, and that Dr. McVea

disregarded that risk" when he authorized the April 9, 2013 court trip.[86] According to the complaint,

Dr. McVea treated Plaintiff following his first suicide attempt and recommended that he be placed

on "extreme suicide watch," whereby a prisoner is placed in four-point restraints in an isolation

cell.[87] Plaintiff alleges that on April 9, 2013, Dr. McVea conducted a physical examination of

---

[82] *See Gobert*, 463 F.3d at 346; *see also Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

[83] *Gobert*, 463 F.3d at 346. *See also See Thompson v. Upshur County, TX*, 245 F.3d 447 (5th Cir. 2001). *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("[N]egligent medical care does not constitute a valid section 1983 claim.").

[84] *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)  (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

[85] *Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995) (internal quotation marks omitted)).

[86] Rec. Doc. 30 at p. 5.

[87] Rec. Doc. 1 at ¶ 20.

15

Plaintiff, at which point Plaintiff stated that "I feel suicidal."[88] Following this examination, according to the complaint, Dr. McVea found Plaintiff to be "medically <u>and</u> mentally stable enough" to go on the court trip.[89] Plaintiff alleges that he was then taken out of the four-point restraints, ordered to put on an orange jumpsuit, placed in wrist and ankle restraints, and escorted to court by two prison officers.[90] Defendants contend that Dr. McVea's decision to authorize the court trip was a medical judgment, and that he is accordingly entitled to qualified immunity. Neither party cites case law arising under analogous facts.

Plaintiff does not allege that Dr. McVea refused to treat him, provided inadequate treatment, or failed to follow a prescribed course of medical treatment. As stated above, it is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.[91] Neither medical malpractice nor negligent care rise to the level of a constitutional violation.[92] According to the complaint, Dr. McVea authorized the court trip only after conducting a physical examination of Plaintiff and determining that he was sufficiently stable to attend the court proceeding. Even though Dr. McVea's diagnosis or medical judgment may have been wrong, there are no facts alleged in the pleadings from which the Court could infer that Dr. McVea "refused to treat [Plaintiff], ignored his complaints, intentionally treated him incorrectly, or engaged in any

---

[88] *Id*. at ¶ 22.

[89] *Id.* at ¶ 47 (emphasis in original).

[90] *Id.* at ¶ 23.

[91] *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

[92] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *See also Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action"); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983"); *Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

16

similar conduct that would clearly evince a wanton disregard for any serious medical needs."[93]  The Court finds that Plaintiff's allegation that Dr. McVea was deliberately indifferent when he authorized the court trip is insufficient to state a claim upon which relief can be granted.[94]

### 2.    Deputy Warden Bickham

Next, Plaintiff alleges that Deputy Warden Bickham "coerced" Dr. McVea "into changing the recommendation McVea made to send plaintiff to an outside facility," and that this alleged interference "violated Plaintiff's right to be treated for his obvious medical illness (suicidal tendencies)."[95] However, as stated above, Plaintiff does not argue that he was denied medical treatment following either suicide attempt, or that the treatment he received at RCC was deficient in any way.  Moreover, Plaintiff does not allege that Deputy Warden Bickham was involved, in any way, with the decision to send Plaintiff to court. Rather, Plaintiff asserts repeatedly that Dr. McVea approved the trip.[96] Even taking his allegations as true, Plaintiff has not alleged any facts demonstrating that Deputy Warden Bickham's alleged conduct rose to the level of egregious intentional conduct required to satisfy the exacting deliberate indifference standard.

### 3.    Warden Gerald

Plaintiff alleges that Assistant Warden Gerald acted with deliberate indifference because he "came on the scene" during Plaintiff's second suicide attempt and, despite having knowledge that

---

[93] *Domino*, 239 F.3d at 756.

[94] *See,  Backe*, 691 F.3d at 648 (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.2d 991, 994 (5th Cir. 1995) (internal quotation marks omitted)). *See also McGrew v. Barr*, No. 10-272,  2010 WL 5758884, at *5 (M.D. La. Oct. 6, 2010) report and recommendation adopted, 2011 WL 397933 (M.D. La. Feb. 1, 2011) (Trimble, J).

[95] Rec. Doc. 1 at ¶ 49; *see also* Rec. Doc. 30 at p. 3 ("Bickham influenced the change in Dr. McVea's recommendation to send Plaintiff to an outside facility for evaluation, and that is the reason why he should be held liable.").

[96]*See, e.g.*, Rec. Doc. 30 at p. 5.

Plaintiff was on extreme suicide watch, failed to terminate the court trip.[97] However, Plaintiff does not allege that Assistant Warden Gerald was involved in the decision to authorize Plaintiff to be taken to court, or that Assistant Warden Gerald played any role in any decision involving Plaintiff's medical treatment. Plaintiff has failed to allege sufficient facts supporting the inference that Assistant Warden Gerald was deliberately indifferent to Plaintiff's medical needs.

### 4.    Warden Tanner

Finally, Plaintiff alleges that Warden Tanner "failed to ensure that Defendants [McVea, Bickham, and Gerald] were doing their jobs as RCC administrators and security personnel within the parameters of federal constitutional law, and ensuring that Defendant McVea performed his duty as a medical administrator/doctor in a fundamentally fair and non-discriminatory manner."[98] However, "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."[99] Plaintiff has not alleged that Warden Tanner knew of Plaintiff's medical needs or that he responded to those needs with deliberate indifference. Moreover, Plaintiff has not alleged facts showing that Warden Tanner was involved in the events at issue, or that there was a sufficient causal connection between his conduct and those events.[100] Nor has Plaintiff pleaded facts sufficient to state a valid claim that Warden Tanner failed to supervise or train the other Moving Defendants.[101]

---

[97] *Id.* at p. 3.

[98] Rec. Doc. 1 at ¶ 48.

[99] *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

[100] *See Oliva v. Rupert*, 555 Fed. Appx. 287, 288 (5th Cir. 2014) (unreported) (*citing Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)).

[101] *See Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

## V. Conclusion

As stated above, the Fifth Circuit has instructed that an eligible defendant's motion to dismiss must be granted unless the plaintiff's complaint states "with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity."[102] Deliberate indifference encompasses "only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."[103] This "extremely high" standard has not been met in the instant case. Construing the pleadings liberally and accepting Plaintiff's contentions as true, the Court finds that Plaintiff has failed to alleged sufficient facts to state a plausible claim of deliberate indifference to his medical needs against Dr. McVea, Deputy Warden Bickham, Assistant Warden Gerald or Warden Tanner.[104] Accordingly,

**IT IS HEREBY ORDERED** that the "Motion for Partial Judgment on the Pleadings Based on Qualified Immunity"[105] filed by Defendants Dr. McVea, Warden Tanner, Deputy Warden Bickham, and Assistant Warden Gerald is **GRANTED**.

**NEW ORLEANS, LOUISIANA,** this 17th day of August, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[102] *Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986) (*citing Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985)).

[103] *See Shafer v. Carmona*, 71 Fed. Appx. 350, 353 (5th Cir. 2003) (unpublished).

[104] As stated above, Plaintiff has also alleged that Assistant Warden Gerald, Capt. Kevin Luper, Sgt. Master Nathaniel Graham, Sgt. Master Darryl Grant, Sgt. Master Terry Kennedy, and Sgt. Gary Crain violated his Eighth Amendment rights by using excessive force or by failing to intervene in the use of excessive force that allegedly occurred on April 9, 2013, while Plaintiff was on the court trip. The pending motion pertains only to Plaintiff's claims of deliberate indifference brought against the Moving Defendants.

[105] Rec. Doc. 28.

19